INHABITANTS OF LEICESTER *vs.* INHABITANTS OF FITCHBURG.

By the present usages of the Baptist denomination, a minister can only be settled by the concurrent act of the church and society. The act of the society, however, need not appear by a formal recorded vote; but if the church has formally voted to settle the minister, the concurrence of the society may be shown by records recognizing him as filling that office, coupled with proof that he actually performed the duties thereof.

CONTRACT brought to recover the amount of expenses paid by the plaintiffs for the support of Lorenzo O. Lovell, a pauper, in the State Lunatic Hospital at Worcester.

The following facts were agreed in the superior court, subject to any exception as to the competency of the evidence :

Lovell was a regularly ordained minister of the Baptist denomination, and was the same person whose settlement was in dispute in *Bellingham* v. *West Boylston,* 4 Cush. 553, and the facts there stated are to be taken as true. He acquired a legal settlement in Fitchburg, as therein stated; and afterwards, after preaching for a time in West Sutton, removed to Leicester, and commenced preaching for the Greenville Baptist Church and Society in that town on the first Sunday in April 1856, and continued to preach there as an ordained minister until May 1858, when he was committed to the State Lunatic Hospital at Worcester. The Greenville Baptist Society has long been in existence, and was incorporated in 1853. The constitution and by-laws were exhibited to the court, and are sufficiently referred to in the opinion. The following is a copy from the church records : " Greenville, April 11, 1856. Owing to the ill health of our pastor, William N. Harvey, he resigned his labors with us and the church. On the recommendation of the standing committee of both church and society, voted to settle as pastor Rev. L. O. Lovell, of West Sutton, and he entered on the duties of pastor the first Sabbath of the present month."

At the annual meeting of the society, held on the 7th of January 1856, a standing committee were chosen, and, under an article " to see what the society will do in relation to the pulpit

supply the current year," it was voted "that the standing com-
mittee supply the pulpit," and " to raise money by subscription."
Lovell's name appeared but once in the society records, in the
record of a meeting held January 18th 1858, thus : " Prayer by
Rev. L. O. Lovell." In the warrant for the annual meeting of
the society for 1857, the same article above copied was inserted
and the same standing committee were chosen ; but they made
no report of their doings for 1856, and they were not instructed
to supply the pulpit. Another committee were chosen at this
meeting, and at the annual meeting for 1858, to get wood for
the minister and meeting-house ; and at the meeting for 1857
it was further voted that the money be raised by subscription
for paying the salary of the minister, and that he be paid in
quarterly payments. And the treasurer of the society paid Lov-
ell his salary while he was preaching as aforesaid.

Lovell's name, as pastor, appears several times upon the
church records, but there is no further record that he was ever
settled or hired.

The plaintiffs duly paid to the treasurer of the hospital the
sum of $560.59, upon his demand, and due notice to the defend-
ants, and refusal of payment by them, were proved.

Upon these facts, judgment was rendered for the defendants,
and the plaintiffs appealed to this court.

*P. C. Bacon & P. E. Aldrich,* for the plaintiffs. The concur-
rent action of both church and society was necessary to settle
Lovell. Encycl. of Relig. Knowl. 190, 408, 814. Wayland's
Principles and Practices of Baptists, 168. Ratio Discip. Fratr.
Nov. Angl. 15, 16. Anc. Chart. 100, 244, 256, 286. *Sts.* 1786,
*c.* 10 ; 1824, *c.* 106 ; 1834, *c.* 183. Rev. Sts. *c.* 20. Gen. Sts.
*c.* 30. Declaration of Rights, art. 3. Amend. Const. of Mass.
art. 11. *Sanger* v. *Third Parish in Roxbury,* 8 Mass. 265. *Com-
monwealth* v. *Spooner,* 1 Pick. 235. *Bellingham* v. *West Boyls-
ton,* 4 Cush. 553. *Avery* v. *Tyringham,* 3 Mass. 160. *Sheldon*
v. *Cong. Parish in Easton,* 24 Pick. 286. No concurrence of the
society was shown. It only appears that he was employed and
preached there for a little more than two years, and was paid
by the society. It does not appear for what length of time he

was employed, how much he was paid, whether he ever administered the ordinances of the church, solemnized a marriage, or attended a funeral.

*N. Wood*, for the defendants, cited, in addition to some of the authorities cited for the plaintiffs, *Bank of Columbia* v. *Patterson*, 7 Cranch, 299; *Elysville Manuf. Co.* v. *Okisko Co.* 1 Maryland Ch. 392; *Proprietors of Canal Bridge* v. *Gordon*, 1 Pick. 297; *Episcopal Charitable Soc.* v. *Episcopal Church in Dedham*, Ib. 372.

DEWEY, J. The inquiry is, whether the facts stated show the pauper to have acquired a legal settlement in the town of Leicester. If he has done so, it is by virtue of the enactment in Rev. Sts. *c.* 45, § 1, *cl.* 7, which provides that "every settled ordained minister of the gospel shall be deemed to have acquired a legal settlement in the town wherein he is or may be settled as a minister." The legal contract as to the settlement of ministers of the Congregational denomination is made by the society, and requires its sanction. The call to the ministerial office by the church alone would not be effectual to give a legal settlement to the person thus selected.

The church and society in which Mr. Lovell is said to have been settled as a minister were of the Baptist denomination and this leads to the inquiry as to the usages of that denomination in reference to the settlement of ministers. To aid us in that inquiry, we have been referred to the treatise entitled "Principles and Practices of Baptists," by Rev. Dr. Wayland, who, in reference to the earlier practice, says that the church called the pastor and provided for his support. They erected houses of public worship, and assumed the whole management of their ecclesiastical affairs, both spiritual and secular. "In the calling and dismission of a pastor, they acknowledged no authority but their own." p. 167. But in reference to the system of settling ministers now prevailing, he says that in New England the company of Baptist worshippers is divided into two organizations, the church and the society, and these two organizations have coördinate jurisdiction in the settlement of a minister.

The Greenville Baptist Society in Leicester is a religious

society, having a regular act of incorporation, with all the pow-ers incident to religious societies established in this common-wealth. It thus appears that these worshippers were divided into two organizations, and each must concur in calling and settling a minister.

The church voted, on the 11th of April 1856, " to settle as pastor Rev. L. O. Lovell," and this is duly shown by the proper record. The point in controversy is, whether there is competent evidence of a concurrence by the society in this vote. There is no record of any vote of the society declaring in direct terms such concurrence. If that is the only competent evidence of such concurrence, the requisite proof of a legal settlement of Mr. Lovell over this society is wanting.

As has been heretofore decided in *Bellingham* v. *West Boyls-ton*, 4 Cush. 556, it is no ground of objection that there was no new ceremony of installation or induction into office, Mr. Lovell having been regularly ordained before. Nor would it be a fatal objection that his settlement was for a limited period of time. The inquiry is, then, whether enough appears from the acts of the society to show that they concurred in the vote of the church and accepted Mr. Lovell as their settled minister.

The positive acts shown by the records of the society, bearing upon this question, are the vote of the society on January 7th 1856, " that the standing committee supply the pulpit," and the vote of the society in January 1857, that a committee be chosen " to get wood for the minister," thus adopting the appropriate title, and applying it to the person then preaching there. At the same time it was further voted " that the money be raised by subscription for paying the salary of the minister, and that he be paid in quarterly payments," thereby assuming that they had a minister with a fixed annual salary, in distinction from having a temporary supply for the pulpit. It is also admitted that the person thus called " the minister," and to whom the salary was payable, and to whom it was paid, was Mr. Lovell The vote for supplying wood to the minister was renewed at the annual meeting in January 1858, but the vote directing the standing committee to supply the pulpit was not renewed

after the call and vote of settlement by the church on the 11th of April 1856. As acts of the society recognizing an existing relation of minister and parish, these votes by the parish are very significant. The church had voted to settle Mr. Lovell as pastor, and the church records add that " he entered on the duties of pastor the first Sabbath of the present month." That in fact Mr. Lovell performed the ordinary duties of a minister to the society from the first Sabbath in April 1856 to May 1858, is a fact agreed by the parties. It is thus shown that the church had formally voted to settle Mr. Lovell as pastor. The society actually receive him as such, call him in their votes " the minister," and at the succeeding annual meeting vote " wood for the minister," proceed to devise ways and means to pay the salary of the minister, pay him as such, and in those various ways indicate their recognition of him as their minister, and their concurrence in the act of the church in voting to settle him as pastor.

In the absence of any by-laws of the society then existing making provisions as to the action of the society in settling a minister, the court are of opinion that these various acts of the society recognizing that relation with Mr. Lovell are sufficient to show an assent of the society to the settlement of Mr. Lovell, in concurrence with the vote of the church, and that he must be deemed to have been the settled minister of the Greenville Baptist Society in Leicester.

In this view of the case, the defendants have shown that the pauper had acquired a legal settlement in the town of Leicester, and thus discharge themselves from liability to the plaintiffs for expenditures for his support at the hospital.

*Judgment for the defendants.*